Benjamin Gubernick (SBN 321883)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone 346-277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYHA HENSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE JOINT CORP., and DOES 1-50,<br><br>Defendants. | No.<br><br>**(1) Violation of California's Unfair Competition Law, Bus. & Prof. Code §§ 17200 et seq. ("UCL")**<br><br>**(2) Violation of the Consumers Legal Remedies Act, Civ. Code §§ 1750 et seq. ("CLRA")**<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

1

Tanyha Henson ("Plaintiff") files this Class Action Complaint against The Joint Corp ("TJC"), and alleges as follows:

**INTRODUCTION**

1. This class action challenges a uniform, deceptive enrollment scheme used by TJC to defraud customers who purchase automatically renewing monthly memberships. At the point of sale, customers are notified that they can cancel their memberships at any time, but only by submitting a "Cancellation Form," to be provided by TJC. But TJC withholds a crucial fact: the Cancellation Form includes a broad general release in favor of TJC, its franchises, and its chiropractors. Consumers are thus induced to enroll without disclosure that they must renew their memberships in perpetuity, or otherwise sign away their legal rights.

2. This omission is material and unlawful. California law requires clear disclosure of material terms and prohibits deceptive omissions. By concealing that its mandatory cancellation form contains a broad release of liability, TJC obtained money from consumers by means of deception and unfair practices. Thus, Plaintiff and the proposed class seek restitution and damages.

**PARTIES**

3. Plaintiff Tanyha Henson is a California citizen and resident who, during the class period, enrolled in a monthly membership at a TJC clinic located in Citrus Heights, Sacramento County.

4. Defendant The Joint Corp. is a corporation with its principal offices in Maricopa County, Arizona. TJC is the owner or franchisor of hundreds of "The Joint Chiropractic®" clinics in California and across the United States. TJC drafted and supplied the uniform enrollment and cancellation materials challenged in this case. TJC responded to Plaintiff's pre-suit notice on corporate letterhead. TJC may be served at its principal place of business at 16767 N. Perimeter Dr., Suite 110. Scottsdale, AZ 85260.

5. Does 1–50 are persons or entities whose true names and capacities are presently unknown to Plaintiff. Does 1-50 include franchisees and/or corporate affiliates that participated in, profited from, or are legally responsible for the conduct alleged herein. Plaintiff will amend as identities are learned in discovery

2

## JURISDICTION AND VENUE

6.      This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d). The proposed class contains at least 100 members; minimal diversity exists because TJC is not a citizen of California; and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

7.      The Court has personal jurisdiction over TJC because it purposefully directed the challenged practices to California consumers, transacts substantial business in California, and caused harm in this District.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to these claims occurred here, including Plaintiff's enrollment and payments at a clinic in Citrus Heights, California. TJC's pre-suit correspondence specifically identifies that location as "Clinic 31088."

## FACTUAL ALLEGATIONS

9.      The Joint Corp. operates a high-volume, partially franchised chiropractic chain. Its "The Joint Chiropractic" clinics have become a fixture in California's strip malls and shopping centers. Its business model is built around recurring monthly membership fees (like a gym chain), rather than traditional, per-appointment charges. Patients typically pay a flat monthly fee in exchange for a handful of visit credits per month, which patients can use at any The Joint Chiropractic location in the country.

10.     Some The Joint Chiropractic storefronts are owned and operated by TJC and some by franchises. However, all use the same forms, which are drafted and distributed by TJC's central office in Arizona. All locations also use TJC's proprietary management software, and customer payments are made to TJC's central billing system.

11.     The customer onboarding process is also standardized nationally. A customer who wishes to purchase a monthly subscription is presented with a "Membership Agreement" to review and sign. The customer provides payment information (e.g. a credit card number) and is then automatically charged each month until the subscription is cancelled.

12.     The Membership Agreement purports to lay out of the steps for cancellation.

Specifically, the Membership Agreement states that, to end the subscription and the monthly charges, the customer must obtain and submit a "Cancellation Notice" at the location where the membership was purchased.

13. The customer is not provided with a copy of the Cancellation Notice during the onboarding process.

14. There is nothing in the Membership Agreement to alert the customer that signing the Cancellation Notice will do anything except end the customer's membership.

15. The Cancellation Notice is a one-page, standardized form drafted by TJC. It contains a signature block that the member must sign. Immediately above the signature block is a release in favor of TJC as well as its "successors, employees, franchisees, affiliates, agents, and assigns[.]" The scope of the release is all claims "associated with, arising under, or related to, the Member's use of this Membership or the services and/or treatment the Member received at a The Joint Chiropractic clinic." The Cancellation Notice states that by signing, the customer agrees to the release.

16. In other words, TJC conditions consumers' ability to stop future charges on surrendering legal claims. Consumers who later try to cancel face the Hobson's choice of waiving legal rights by signing TJC's Cancellation Notice or continuing to be charged.

17. At the time of enrollment, the requirement to use the y Cancellation Form is disclosed, but the embedded release is not. That omission induces consumers to enroll and pay money they otherwise would not pay.

18. Plaintiff enrolled in TJC's monthly membership at a The Joint Chiropractic franchise in Citrus Heights in December 2022. At the time of enrollment, it was not disclosed to Plaintiff that terminating the membership would require signing a form containing a general liability release. Plaintiff would not have enrolled or would have only been willing to pay less had this material term been disclosed. She suffered economic injury when she paid money based on TJC's deceptive omission.

**CLASS ALLEGATIONS**

19. Plaintiff brings this action under Fed. R. Civ. P 23 on behalf of herself and a Class

4

defined as:

> All people residing in California who, within four years preceding the filing of this action through the date of class certification, enrolled in a monthly membership at any The Joint Chiropractic clinic in California and paid at least one membership fee.

Excluded from the Class are TJC's officers and directors; the Court and its staff; and counsel for the parties.

20. **Numerosity (Rule 23(a)(1))**: The Class numbers in the tens or hundreds of thousands. Joinder is impracticable.

21. **Commonality (Rule 23(a)(2))**: Common questions include: (a) whether The Joint failed to disclose that the Cancellation Notices contained a general release at enrollment; (b) whether that omission was material; (c) whether that omission was deceptive, unfair, and/or unlawful; (d) whether The Joint obtained money from Class members by means of that omission; (e) whether that omission violated California's Automatic Renewal Law, Cal. Bus. & Prof. Code §§ 17600 et seq. (the "ARL").

22. **Typicality (Rule 23(a)(3))**: Plaintiff's claims are typical. Like all Class members, she enrolled and paid fees she otherwise would not have had TJC disclosed that the Cancellation Notice contained a general release.

23. **Adequacy (Rule 23(a)(4))**: Plaintiff will fairly and adequately protect the Class's interests. She has no conflicts and has retained counsel who are experienced in consumer class actions and have the financial and other resources to prosecute this matter effectively on behalf of the Class.

24. **Predominance & Superiority (Rule 23(b)(3))**: Common issues predominate because liability turns on a uniform omission concerning the content of the Cancellation Form. That omission was either materially misleading or it was not; the answer will be the same for all Class members. Likewise, omission of the general release requirement either did or did not violate the ARL, which will be the central question in determining whether the UCL's "unlawful" prong was violated. A class action is superior to individual litigation due to the relatively modest sums at stake for each consumer and the efficiency of resolving common questions once.

## CAUSES OF ACTION

### COUNT 1
### Violation of California's Unfair Competition Law
### (Bus. & Prof. Code §§ 17200 et seq.)
### On Behalf of the Class

25. Plaintiff incorporates all allegations in this Complaint.

26. The UCL prohibits any unlawful, unfair, or fraudulent business act or practice.

27. TJC acted fraudulently by stating at enrollment that customers must use the Cancellation Notice, but omitting that the Cancellation Notice contains a general release.

28. TJC acted unfairly, in that it obtained an unearned advantage over scrupulous competitors that do not use underhanded tactics to reduce exposure to civil liability.

29. TJC acted unlawfully, in that it violated the CLRA by representing that services have characteristics they do not and by omitting material facts. TJC also violated the ARL, which mandates clear disclosure of material terms and easy-to-use cancellation free of obstructive conditions.

30. Plaintiff and Class members suffered economic injury when they paid money they otherwise would not have paid had the Cancellation Notice's general release been disclosed. The Joint thus obtained money from consumers by means of the unfair, unlawful, and fraudulent practices, entitling Plaintiff and the Class to restitution of all membership fees paid plus interest.

31. Plaintiff pleads her UCL claim in the alternative to damages under the CLRA, to the extent a legal remedy is inadequate to address the full scope of TJC's wrongdoing and equitable restitution is appropriate.

### COUNT 2
### Violation of the Consumers Legal Remedies Act
### (Civ. Code §§ 1750 et seq.)
### On Behalf of the Class

32. Plaintiff incorporates all allegations in this Complaint.

33. Plaintiff and Class members are "consumers" and TJC is a "person" engaged in transactions intended to result in the sale of services to consumers, within the meaning of the CLRA.

34. The Joint violated Civ. Code § 1770(a), including subsections (5), (9), and (14), by, among other things, representing that services had characteristics they did not have (easy, straightforward cancellation) and by failing to disclose material information (that cancellation required a general release) with the intent that consumers rely on the omission.

35. The omission occurred at the time of sale. Had the truth been disclosed, Plaintiff and Class members would not have enrolled or would have paid less. The omission therefore caused economic harm.

36. Plaintiff therefore seeks damages, injunctive relief, restitution, and attorneys' fees under Civ. Code § 1780, and, because TJC's conduct was knowing, intentional, and carried on with conscious disregard of consumers' rights, punitive damages as permitted by law.

37. Plaintiff provided written notice to TJC as required by Civil Code § 1782 on June 18, 2025 and gave TJC at least thirty days to correct, repair, or otherwise rectify the unlawful acts. TJC did not cure within that period. Plaintiff followed up on September 23, 2025 and TJC then denied liability on October 10, 2025.

## PRAYER FOR RELIEF

Plaintiff, on behalf of herself and the proposed Class, prays for judgment against Defendants as follows:

A. Certification of the Class, appointment of Plaintiff as Class Representative, and appointment of her attorneys as Class Counsel;

B. Award restitution under the UCL and/or CLRA in an amount to be proven at trial, together with pre- and post-judgment interest;

C. Awarding damages under the CLRA, including actual, statutory, and (where permitted) punitive damages;

D. Awarding reasonable attorneys' fees and costs under Civ. Code § 1780(e), Code Civ. Proc. § 1021.5, and any other applicable authority;

E. G. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

/s/Benjamin Gubernick

Benjamin Gubernick (SBN 321883)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone 346-277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77002

8