UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYHA HENSON, on behalf of herself and all others similarly situated<br>Plaintiff,<br>v.<br>THE JOINT CORP., *et al.*,<br>Defendants. | No. 2:25-cv-03006-DJC-CKD<br><br>ORDER |

Plaintiff filed this class action lawsuit against Defendant for violations of the California Unfair Competition Law, and the Consumer Legal Remedies Act premised on allegations of a deceptive enrollment scheme. Defendant now moves to compel arbitration of Plaintiff's individual claims and seeks dismissal of her class claims. Plaintiff contends that the motion should be denied because (1) the agreement to arbitrate is illusory; (2) any agreement found to exist was breached by Defendant; and (3) the arbitration provisions terms are unconscionable. Because the Court finds that the Arbitration Agreement is enforceable, the Court GRANTS Defendant's Motion to Compel Arbitration.

////

## BACKGROUND

Plaintiff Tanyha Henson enrolled in a monthly membership at Defendant The Joint Corp.'s clinic located in Citrus Heights, California in December 2022. (Compl. (ECF No. 1) ¶ 3.) Defendant operates clinics throughout California and across the United States and has its principal place of business in Arizona. (*Id.* ¶ 4.) To enroll with the clinic, Plaintiff was presented with a "Membership Agreement" to review and sign. (*Id.* ¶¶ 11, 18.) The Membership Agreement contains a section titled "Terms and Conditions of Membership" which includes Section 17 "Dispute Resolution-Mandatory Arbitration." (Agreement (ECF No. 11-3) at 5–6.)

Plaintiff's claims against Defendant have to do with Defendant's cancellation process, in which a customer may cancel their membership at any time but only by submitted a "Cancellation Form." (*See* Compl. ¶¶ 1–2, 12–17.) Plaintiff alleges that Defendant withholds the fact that the Cancellation Form includes a broad general release in favor of Defendant, its franchises and its chiropractors. (*Id.* ¶¶ 1–2.) Plaintiff brings two causes of action for violating the California Unfair Competition Law and the Consumer Legal Remedies Act. (*See generally id.*) Defendant filed the instant motion to compel arbitration, arguing that Plaintiff's claims fall within the scope of the arbitration provision she agreed to upon her enrollment. (*See generally* Mot. (ECF No. 11).) The matter is fully briefed (Opp'n (ECF No. 17); Reply (ECF No. 18)) and was ordered submitted pursuant to Local Rule 230(g). (ECF No. 20).

## LEGAL STANDARD

The FAA governs arbitration agreements. 9 U.S.C. § 2. Under the FAA, a signatory to an arbitration agreement may obtain an order directing a noncomplying party to arbitrate in the manner provided for in the agreement. 9 U.S.C. § 4. In weighing a motion to compel arbitration, a court must determine: (1) whether a valid agreement to arbitrate exists, and if it does (2) whether the agreement encompasses the dispute at issue. *Boardman v. Pac. Seafood Grp.,* 822 F.3d 1011, 1017 (9th Cir. 2016). "Arbitration is a matter of contract, and the FAA requires courts to honor

parties' expectations." *AT&T Mobility LLC v. Concepcion,* 563 U.S. 333, 351 (2011) (citation omitted).

When considering a motion to compel arbitration, a court applies a standard similar to the summary judgment standard of Federal Rule of Civil Procedure 56. *See Knapke v. PeopleConnect,* Inc., 38 F.4th 824, 831 (9th Cir. 2022). The party opposing arbitration receives the benefit of any reasonable doubts and the court draws reasonable inference in that party's favor, and only when no genuine disputes of material fact surround the arbitration agreement's existence and applicability may the court compel arbitration. *Id.*; *see Three Valleys Muin. Water Dist. v. E.G. Hutton & Co., Inc.,* 925 F.2d 1136, 1141 (9th Cir. 1991). The decision to compel arbitration is mandatory, not discretionary, if the requirements are met. *Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 218 (1985).

## DISCUSSION

### I. Membership Agreement

As stated above, the Membership Agreement contains "Terms and Conditions of Membership" which are incorporated into the Membership Agreement. The Terms and Conditions include Section 17, which is titled "Dispute Resolution-Mandatory Arbitration." The section reads as follows:

> In the event of any dispute, controversy, or claim arising out of or relating to these Terms and Conditions, the Agreement, your treatment or the services received at a The Joint Chiropractic clinic, Member understands and agrees that Member and the Joint Corp. (and/or a The Joint Chiropractic franchisee, as applicable) shall first attempt, promptly and in good faith, to resolve any such dispute between them by mediation. Failure by the Member to deliver a formal mediation notice prior to the inception of a legal claim or lawsuit shall constitute prima facie evidence and basis for The Joint Corp's seeking a motion to dismiss the of [sic] the lawsuit. If the parties are unable to resolve any such dispute by mediation with a reasonable time (not to exceed sixty (60) days), YOU AS THE MEMBER AGREE THAT THE DISPUTE SHALL, UNLESS OTHERWISE

> MUTUALLY AGREED UPON BY THE PARTIES FOR ANY PARTICULAR DISPUTE, BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION BEFORE THE AMERICAN ARBITRATION ASSOCIATION, PURSUANT TO THE THEN-CURRENT CONSUMER ARBITRATION RULES. ANY ARBITRATOIN COMMENCED BETWEEN YOU AND THE JOINT CORP. (AND/OR A THE JOINT CHIROPRACTIC FRANCHISEEE) MUST BE ARBITRATED IN PHOENIX, ARIZONA. ARBITRATION MUST BE ON AN INDIVIDUAL BASIS. THIS MEANS NEITHER YOU NOR THE JOINT CORP. (AND/OR A THE JOINT CHIROPRACTIC FRANCHISEE) MAY JOIN CLAIMS IN ARBITRATION WITH OR AGAINST OTHER USERS OR LITIGATE IN COURT OR ARBITRATE ANY CLAIMS AS A REPRESENTATIVE OR MEMBER OF A CLASS. YOU UNDERSTAND THAT BY AGREEING TO ARBIRATION YOU ARE WAIVING CERTAIN LEGAL RIGHTS, INCLUDING THE RIGHT TO SUE IN COURT, THE RIGHT TO HAVE THE DIPSUTE DECIDED BY A JUDGE OR JURY, AND THE RIGHT TO BRING, OR BE PART OF, A CLASS ACTION CASE.

(Opp'n at 3 (citing Agreement at 5–6.) The Terms and Conditions also include Section 4, titled "Changes to Terms and Conditions, which reads, in part: "[w]e reserve the right to revise, amend, or alter these Terms and Conditions without notice to Member, and such changes will become effective immediately without further action required on the part of Us or anyone else." (Opp'n at 3 (citing Agreement at 5).)

## II. Whether the Agreement is Illusory

The first "gateway" issue the Court must assess is whether a valid agreement to arbitrate exists. *See Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022).[1] Plaintiff does not dispute that she signed and initialed the Membership Agreement, including a section titled "Terms and Conditions." (*See* Knauf Decl. (ECF No. 11-2) ¶ 5.) Rather, Plaintiff asserts that no valid agreement to arbitrate exists because Section 4 is a unilateral modification provision that renders the arbitration provision illusory. (*See* Opp'n at 4–8.) Defendant argues that the unilateral

[1] Plaintiff does not dispute that her claims fall within the scope of the agreement. *See Boardman,* 822 F.3d at 1017.

modification provision does not render the arbitration clause illusory, and that even if it did, the unilateral modification provision could be severed. (*See* Reply at 2–5.)

To determine whether parties have agreed to arbitrate certain disputes, federal courts are to apply state-law principles of contract formation. *Berman,* 30 F.4th at 855. Here, the validity of the provisions in the Terms and Conditions is governed by California law. (*See* Agreement at 6.) In California, a contract is formed if the (1) parties are capable of contracting; (2) they consent; (3) there is a lawful object; and (4) there is sufficient cause of consideration. Cal. Civ. Code § 1550. "A contract is unenforceable as illusory when one of the parties has the unfettered or arbitrary right to modify or terminate the agreement or assumes no obligations thereunder." *Harris v. TAP Worldwide, LLC,* 248 Cal. App. 4th 373, 385 (2016) (citations omitted).

However, "a provision in an agreement permitting one party to modify contract terms does not, standing alone, render a contract illusory" because of the implied covenant of good faith and fair dealing implicit in every contract. *Serpa v. California Sur. Investigations, Inc.,* 215 Cal. App. 4th 695, 706 (2013), *as modified* (Apr. 19, 2013), *as modified* (Apr. 26, 2013). Nevertheless, if a unilateral modification provision expressly addresses whether contract changes apply to claims that have accrued or are known to the employer, the covenant cannot create implied terms that contradict express language. *Peleg v. Neiman Marcus Grp., Inc.*, 204 Cal. App. 4th 1425, 1465 (2012) (citations omitted). But, if the provision "is silent as to whether contract changes apply to claims, accrued or known," the provision "is impliedly restricted by the covenant [of good faith and fair dealing] so that changes do not apply to such claims." *Id.* (citations omitted).

Here, Plaintiff argues that the unilateral modification clause leaves no gaps for the covenant to fill because it lacks any prescribed limitations and expressly disclaims any right to notice and states that changes will have immediate effect. However, because the unilateral modification provision is silent as to whether contract changes apply to claims, accrued or known, the Court finds that it does not render the

arbitration provision illusory. *See Peleg*, 204 Cal. App. 4th at 1465; *Aggarwal v. Coinbase, Inc.,* 685 F. Supp. 3d 867, 876–77 (N.D. Cal. 2023) (collecting cases). Accordingly, the Court finds that the arbitration agreement is not illusory and that a valid agreement to arbitrate exists.

**III. Breach of the Agreement**

Plaintiff next argues that even if an arbitration agreement was found to exist, the Defendant committed material breach and waived the right to arbitration by refusing to abide by the alternative dispute resolution scheme it had demanded. (Opp'n at 7–8.) Defendant argues that it did not breach the Agreement and instead contends that Plaintiff failed to follow the proper procedure. (*See* Reply at 6–8.) The Court need not determine whether a breach occurred or whether arbitration had been waived, because Defendant represents – and Plaintiff does not dispute – that the Parties did, in fact, engage in the required mediation effort on February 24, 2026. (Swaney Decl. (ECF No. 11-1) ¶¶ 3,4.)

**IV. Unconscionability**

Plaintiff next argues that the arbitration provision is procedurally and substantively unconscionable. (Opp'n at 9–10.) Defendant concedes that minimal procedural unconscionability exists, but disputes that the provision is sufficiently substantively unconscionable to be declared unenforceable. (Reply at 9–12.)

Section 2 of the FAA "permits arbitration agreements to be declared unenforceable upon such grounds as exist at law or in equity for the revocation of any contract." *Patrick v. Running Warehouse, LLC*, 93 F.4th 468, 479 (9th Cir. 2024) (citations and internal quotations omitted). This clause permits arbitration agreements to be invalidated by generally applicable contract defenses. *Id.* (citations omitted). Under California law, a court may refuse to enforce a provision of a contract if it determines that the provision is both procedurally and substantively unconscionable. *Lim v. TForce Logistics,* 8 F.4th 992, 1000 (9th Cir. 2021) (citing Cal. Civ. Code § 1670.5(a)). However, procedural and substantive unconscionability "need not be

present in the same degree," and instead, a sliding scale exists such that "the more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." *Id.* (citations omitted).

**A. Procedurally Unconscionability**

First, the Court assesses whether the arbitration agreement is procedurally unconscionable. A procedural unconscionability analysis "begins with an inquiry into whether the contract is one of adhesion." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 126 (2019) (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 113 (2000)). An adhesion contract is standardized, generally on a preprinted form, and offered by the party with superior bargaining power "on a take-it-or-leave-it basis." *Id.* (citing *Baltazar v. Forever 21, Inc.,* 62 Cal. 4th 1237, 1245 (2016) and *Armendariz,* 24 Cal. 4th at 113). In such instances, courts assess whether circumstances of the contract's formation created such oppression or surprise that closer scrutiny of its overall fairness is required. *Id.* (citing *Baltazar*, 62 Cal. 4th at 1245–46 and *Farrar v. Direct Commerce, Inc.,* 9 Cal. App. 5th 1257, 1267–68 (2017)). "Oppression occurs where a contract involves lack of negotiation and meaningful choice, surprise where the allegedly unconscionable provision is hidden within a prolix printed form." *Pinnacle Museum Tower Assn. v. Pinnacle Mkt. Dev. (US), LLC,* 55 Cal. 4th 223, 247 (2012).

Here, Defendant does not meaningfully dispute that the Membership Agreement is a contract of adhesion such that minimal procedural unconscionability exists. (Reply at 9–10); *see Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.,* 622 F.3d 996, 1004 (9th Cir. 2010) (superseded by statute on other grounds) ("California law treats contracts of adhesion, or at least terms over which a party of lesser bargaining power had no opportunity to negotiate, as procedurally unconscionable to at least some degree.").

Courts take several factors into consideration when determining if oppression exists. These include (1) the amount of time the party is given to consider the proposed contract; (2) the amount and type of pressure exerted on the party to sign the proposed contract; (3) the length of the proposed contract and the length and complexity of the challenged provision; (4) the education and experience of the party; and (5) whether the party's review of the proposed contract was aided by an attorney. *OTO, L.L.C.,* 8 Cal. 5th at 126–27. "Surprise occurs when the allegedly unconscionable provision is hidden." *Carmona v. Lincoln Millennium Car Wash, Inc.*, 226 Cal. App. 4th 74, 84 (2014).

Plaintiff argues that the location of the arbitration clause at the bottom of the Terms and Conditions, which itself is "essentially an appendix" to the Membership Agreement, coupled with the failure to include any fields for the customer to sign and initial demonstrates procedural unconscionability. (Opp'n at 10.) However, in reviewing the Agreement, the Court does not find that it was "hidden". Although at the bottom of the Terms and Conditions page, the arbitration provision is in the same size and font as the rest of the Agreement, but in all capital letters such that it is visually distinguishable from the rest of the text and is located in a separate paragraph with the heading "Dispute Resolution – Mandatory Arbitration." *See Appel v. Concierge Auctions, LLC*, No. 17-cv-02263-BAS-MDD, 2018 WL 1773479, at *9 (S.D. Cal. Apr. 13, 2018) (finding no surprise where the location of the arbitration provision where in a standard size and font that corresponds with the rest of the Agreement, the provision was titled and, in all caps, and did not contain deceptive or overly confusing language). To the extent that there was no signature field next to the arbitration provision itself, the Court is not convinced that indicates procedural unconscionability. Plaintiff initialed a portion of the Membership Agreement stating that she read and agreed to all the Terms and Conditions and the arbitration provision was distinct within the Terms and Conditions. Thus, the Court finds that modest procedural unconscionability exists.

**B. Substantive Unconscionability**

Next, Plaintiff argues that the arbitration provision is unconscionable because of its forum selection clause in Arizona, its inclusion of a one-sided formal mediation requirement, which is particularly problematic when coupled with the unilateral modification provision, and the lack of clarity surrounding the triggering event for the 60-day window to file for arbitration. (Opp'n at 9–10.) Defendant disputes that any part of the Agreement renders the arbitration provision substantively unconscionable.

Substantive unconscionability exists where terms are "overly harsh," "unduly oppressive," "unreasonably favorable," or "shock the conscience." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1261 (9th Cir. 2017) (citing *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 911 (2015)). "Not all one-sided contract provisions are unconscionable[.]" *Sanchez,* 61 Cal. 4th at 911. Rather, substantive unconscionability exists where terms are "unreasonably favorable to the more powerful party," *Baltazar,* 62 Cal. 4th at 1244 (citation omitted), such that it is so one-sided as to shock the conscience, *Pinnacle Museum Tower Assn.,* 55 Cal. 4th at 246. The Court will address each of Plaintiff's arguments regarding substantive unconscionability in turn.

**1. Forum Selection Clause**

First, Plaintiff challenges the forum selection clause in the arbitration provision, arguing that "[f]orcing a consumer in Sacramento to travel of thousands of miles to litigate a low-dollar dispute is inherently oppressive." (Opp'n at 9.) Generally, "inconvenience and expense of a forum alone is not enough to treat a forum-selection clause as unenforceable," rather, "the clause must be unreasonable in that the forum selected would be unavailable or unable to accomplish substantial justice." *Lim,* 8 F. 4th at 1002 (internal citations and quotations omitted). This standard is the same for both arbitration and non-arbitration agreements. *Sanchez,* 61 Cal. 4th at 912. Here, Plaintiff has not argued more than mere inconvenience and thus has failed to meet her burden of showing the forum-selection clause to be unreasonable. *See Chun Ping Turng v. Guaranteed Rate, Inc.*, 371 F. Supp. 3d 610, 631 (N.D. Cal. 2019) (finding that

the plaintiff failed to demonstrate a forum selection clause was unconscionable where she did not set forth facts showing difficulty). Moreover, selecting a forum in Phoenix, Arizona appears reasonable because that is the location of Defendant's principal place of business. (Reply at 10–11.) Thus, the forum selection clause is not substantively unconscionable.

**2. Pre-Arbitration Dispute Resolution Procedures**

Next, Plaintiff argues that the pre-arbitration resolution procedures are substantively unconscionable and specifically challenges the "one-sided" formal mediation requirement and the 60-day window to send a mediation demand. (Opp'n at 9–10.) Plaintiff contends that the language around the 60-day window creates a "pre-suit trap" for Defendant's benefit. (*Id.*) Defendant disputes this, arguing that, at most, the 60-day requirement creates ambiguity in the contract. (Reply at 12.)

Ninth Circuit courts have found pre-arbitration dispute procedures substantively unconscionable where agreements involve time restrictions on bringing claims, a lack of mutuality, and unfair dispute resolution processes. *See Bielski v. Coinbase, Inc.,* 87 F.4th 1003, 1015 (9th Cir. 2023) (citing *Nyulassy v. Lockheed Martin Corp.,* 120 Cal. App. 4th 1267, 1282–83 (2004); and *Pokorny v. Quixtar, Inc.,* 601 F.3d 987, 998 (9th Cir. 2010)).

Here, the pre-arbitration procedures read, in part:

> . . . Member understands and agrees that Member and The Joint Corp. . . shall first attempt, promptly and in good faith, to resolve any such dispute between them by mediation. Failure by the Member to deliver a formal mediation notice prior to the inception of a legal claim or lawsuit shall constitute prima facie evidence and basis for The Joint Corp.'s seeking a motion to dismiss of the lawsuit. If the parties are unable to resolve any such dispute by mediation within a reasonable time (not to exceed sixty (60) days) YOU AS THE MEMBER AGREE THAT THE DISPUTE SHALL UNLESS OTHERWISE MUTUALLY AGREED BY THE PARTIES FOR ANY PARTICULAR DISPUTE, BE RESOLVED EXCLUSIVELY BY BINDING ARBITRATION. . .

(Agreement at 5.)

First, considering Plaintiff's concern about "one-sidedness", the plain language of the mediation requirement facially applies to both the "Member" and Defendant as is reads: "Member and the Joint Corp. . . shall first attempt, promptly and in good faith, to resolve any dispute between them." (Agreement at 5.) Although the responsibility is on the Member to deliver a formal mediation notice, the Court does not find this provision to be so one-sided so as to shock the conscience. *See Bielski,* 87 F.4th at 1015 (explaining that "something more than the absence of mutuality is required" to find a provision unconscionable); *Sanchez,* 61 Cal. 4th at 911 ("Not all one-sided contract provisions are unconscionable[.]"). Second, for reasons similar to those discussed above, the implied covenant of good faith and fair dealing prevents Defendant from exercising its rights under the unilateral modification provision in an unconscionable manner. *See Tompkins v. 23andMe, Inc.,* 840 F.3d 1016, 1033 (9th Cir. 2016).

However, the Court finds that substantive unconscionability exists to the extent that the failure to send a formal mediation demand constitutes prima facie evidence for dismissal because there is limited guidance as to what formal notice entails. Applying the sliding scale approach, the Court concludes that this aspect of the pre-arbitration dispute is unconscionable. Under California law, "unlawful contractual provisions should be severed and the remainder of the contract enforced." *Ronderos v. USF Reddaway, Inc.*, 114 F.4th 1080, 1099 (9th Cir. 2024) (citing Cal. Civ. Code § 1599). However, "[i]f the central purpose of the contract is tainted with illegality, then the contract as a whole cannot be enforced." *Id.* 1099–100 (citing *Armendariz,* 99 Cal. 2d at 745). Here, the Court strikes the following language from the pre-arbitration dispute procedures, finding it to be "collateral to the main purpose of the contract", *id.* at 1099: "[f]ailure by the Member to deliver a formal mediation notice prior to the inception of a legal claim or lawsuit shall constitute prima facie evidence

and basis for The Joint Corp.'s seeking a motion to dismiss of the lawsuit," (Agreement at 5).

* * *

Because the Court ultimately finds that a valid arbitration agreement was formed, and that Plaintiff's claims fall within the scope of the agreement, the Court concludes that staying Plaintiff's claims is warranted.

**V. Class Action Waiver**

Defendant also argues that Plaintiff waived her right to bring her claims on a class or collective basis. Plaintiff argues that because the arbitration provision is unenforceable and invalid, the class action waiver also fails. The arbitration provision provides that "ARBITRATION MUST BE ON AN INDIVIDUAL BASIS" and that the Member is "WAIVING CERTAIN LEGAL RIGHTS, INCLUDING. . . THE RIGHT TO BRING, OR BE PART OF, A CLASS ACTION CASE." (Agreement at 5.) As discussed above, the Court has determined that the arbitration provision is enforceable. Moreover, the Supreme Court has found such class action waivers enforceable. *See AT&T Mobility LLC,* 563 U.S. at 351–52 (2011). Thus, the Court dismisses Plaintiff's putative class claims.

////

////

////

////

////

////

////

////

////

////

////

## CONCLUSION

For the reasons discussed above, IT IS HEREBY ORDERED THAT:

1. Defendant's Motion to Compel Arbitration (ECF No. 11) is GRANTED. Plaintiff's individual claims are compelled to arbitration.
2. Plaintiff's putative class claims are DISMISSED without prejudice.
3. Plaintiff's individual claims are STAYED pending arbitration. The Parties are to immediately notify the Couty once arbitration of Plaintiff's claims is complete. The Clerk of Court is directed to administratively close this case.

IT IS SO ORDERED.

Dated: **August 12, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE

DJC6 – HENSON25cv03006.mtca_v3