Benjamin Gubernick (SBN 321883)
WGLA, LLP
E-mail: ben@wglawllp.com
Telephone 346-277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77007

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TANYHA HENSON, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE JOINT CORP., and DOES 1-50,<br><br>Defendants. | No. 2:25-cv-3006 DJC CKD<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO AMEND THE AUGUST 13, 2026 ORDER TO CERTIFY AN INTERLOCUTORY APPEAL UNDER 28 U.S.C. § 1292(b)**<br><br>Hearing Date: October 8, 2026<br><br>Time: 1:30 p.m.<br><br>Location: United States District Court 501 I Street, Sacramento CA Courtroom 7<br><br>Judge: Hon. Daniel J. Calabretta Action<br><br>Filed: October 16, 2025 |

## NOTICE OF MOTION AND MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 8, 2026, at 1:30 p.m. or as soon thereafter as counsel may be heard in Courtroom 7 on the 14th floor of the United States District Court, Eastern District of California, Robert T. Matsui United States Courthouse, located at 501 I Street, Sacramento, CA 95814, Plaintiff Tanyha Henson will and hereby does move this Court to amend its August 13, 2026 Order on Defendant the Joint Corp.'s Motion to Compel Arbitration (Dkt. 21) to certify the following question for interlocutory appeal under 28 U.S.C. § 1292(b):

> **Whether the implied covenant can restrict unilateral modifications to prospective application notwithstanding express language authorizing modifications without notice and making them effective immediately.**

This Motion is based on this Notice of Motion, the following Memorandum of Points and Authorities in support thereof, and any other matter the Court may consider. This Motion is made following the exhaustion of meet and confer efforts. See infra at page 10. Plaintiff believes this motion is suitable for submission without oral argument.

Respectfully submitted,

**WGLA, LLP**

/s/Benjamin Gubernick
Benjamin Gubernick (SBN 321883)
E-mail: ben@wglawllp.com
Telephone 346-277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77007

**MEMORANDUM OF POINTS AND AUTHORITY**

Plaintiff Tanyha Henson respectfully moves the Court to amend its August 13, 2026 Order, ECF No. 21, to certify the Order for interlocutory appeal under 28 U.S.C. § 1292(b).

Certification is proper because the ruling presents a controlling and genuinely unsettled question of California contract law that should be resolved before the parties proceed through arbitration:

> **Whether the implied covenant can restrict unilateral modifications to prospective application notwithstanding express language authorizing modifications without notice and making them effective immediately.**

Each requirement of § 1292(b) is satisfied.

***First***, the question is purely legal and controlling: its answer determines whether any agreement to arbitrate was formed, whether Plaintiff must litigate her individual claims in arbitration, and whether her class claims remain dismissed.

***Second***, substantial grounds for disagreement exist because California decisions permit the implied covenant to fill contractual silence but prohibit it from contradicting express terms—and the agreement here expressly eliminates notice and makes every change effective immediately.

***Third***, immediate review will either prevent an entire arbitration in a forum lacking authority or confirm that arbitration should proceed.

The case for certification is reinforced by *Paxson v. Live Nation Ent., Inc.*, No. 25-2436, --- F.4th ----, 2026 WL 2207960 (9th Cir. July 31, 2026) ("*Paxson*"), published less than two weeks before this Court's Order. There, the Ninth Circuit certified to the Nevada Supreme Court a materially parallel question involving unilateral modification without notice, immediate effectiveness, and no exclusion for the arbitration clause or accrued claims. *Paxson* expressly discussed *Peleg v. Neiman Marcus Group, Inc.*, 204 Cal. App. 4th 1425 (2012) ("*Peleg*"), the principal authority this Court relied on in its Order. *Paxson* stated that *Peleg* did not supply an answer

to the same question presented here: "whether the covenant operates at the contract formation stage to save an agreement that would otherwise fail for lack of consideration, or whether instead the covenant may only apply to contracts that are already formed." *3.

As the Order acknowledges, contract formation is a gateway issue. And as *Paxson* recognizes, *Peleg* does not say the covenant can save an arbitration provision that "permits changes 'at any time' makes '[a]ny changes' 'effective immediately' upon posting, and nowhere excludes accrued claims or pending claims." *Paxson* at *3. Accordingly, certification is appropriate.

## I. RELEVANT BACKGROUND

Section 17 of the Membership Agreement requires bilateral arbitration. But Section 4 reserves to Defendant the right to alter all of the Terms and Conditions, including Section 17: "We reserve the right to revise, amend, or alter these Terms and Conditions without notice to Member, and such changes will become effective immediately without further action required on the part of Us or anyone else." ECF No. 17 at 3; ECF No. 11-3 at 5.

Plaintiff argued that this provision left Defendants free to alter or eliminate their arbitration obligation immediately and without ever notifying the Member, making Defendants' promise illusory. The Court recognized that Section 4 "expressly disclaims any right to notice and states that changes will have immediate effect." ECF No. 21 at 5. The Court nevertheless held that the agreement was not illusory because Section 4 "is silent as to whether contract changes apply to claims, accrued or known," and the implied covenant therefore prevents application of changes to such claims. *Id.* at 5–6.

The Court consequently compelled Plaintiff's individual claims to arbitration, dismissed her putative class claims, stayed the individual claims, and administratively closed the case. *Id.* at 12–13.

## II. LEGAL STANDARD

Section 1292(b) permits certification when an interlocutory order: (1) involves a controlling question of law; (2) presents substantial ground for difference of opinion; and (3) an immediate appeal may materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b); *ICTSI Oregon, Inc. v. International Longshore & Warehouse Union*, 22 F.4th 1125, 1130–31 (9th Cir. 2022).

Although the Federal Arbitration Act generally bars interlocutory appeals from orders compelling arbitration or staying litigation, it expressly preserves review "as otherwise provided in section 1292(b)." 9 U.S.C. § 16(b). The Ninth Circuit has accordingly held that an order compelling arbitration may present a controlling question when an erroneous ruling could cause "the needless expense and delay of litigating an entire case in a forum that has no power to decide the matter." *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 318–19 (9th Cir. 1996).

Substantial grounds for disagreement exist when "fair-minded jurists might reach contradictory conclusions" on a novel or difficult legal issue. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011). Directly conflicting precedent is unnecessary; a district court need not await the development of contradictory decisions before certifying a genuinely uncertain question. *Id.*

Federal Rule of Appellate Procedure 5(a)(3) authorizes the Court to amend the Order to include the statement required by § 1292(b).

## III. THE ORDER SATISFIES ALL THREE REQUIREMENTS

### A. The Order presents a controlling, purely legal question.

The proposed question requires no factual development. The membership agreement's language is undisputed—the only issue is the legal effect of its written terms under California contract law. It is therefore a pure question of law subject to de novo review.

The question is controlling in every practical sense. If Section 4 rendered Defendants' arbitration promise illusory, no agreement to arbitrate was formed, and

Plaintiff's individual claims and class claims would proceed in this Court. Conversely, if the Court's interpretation is affirmed, the parties can proceed with arbitration knowing that the threshold formation question has been resolved.

*Kuehner* is directly on point. There, the Ninth Circuit held that an arbitration order involved a controlling question because proceeding in an unauthorized arbitral forum would impose needless expense and delay. 84 F.3d at 319. Section 16(b)'s express reference to § 1292(b), the court explained, confirms that Congress contemplated interlocutory review of arbitration orders in appropriate cases. *Id.*

And here, the alleged defect concerns the formation of the arbitration agreement itself. As *Paxson* explained, if a party's modification power makes a promise to arbitrate illusory, "no agreement to arbitrate was formed[.]" *Paxson* at *5. Should Plaintiff ultimately succeed on appeal, it will be as if the arbitration never happened.

**B. Substantial grounds exist for disagreement over the interaction between the express no-notice/immediate effect terms and the implied covenant.**

**1. California authority does not resolve this agreement's language.**

California generally recognizes that a unilateral modification provision is not automatically illusory, as the implied covenant may constrain the drafter's discretion. *Serpa v. California Surety Investigations, Inc.*, 215 Cal. App. 4th 695, 706–08 (2013). But California law imposes an equally established limitation: the implied covenant cannot create obligations that contradict the agreement's express terms. *Peleg* at 1464–65.

And the agreement at issue in the present matter is not silent on the issues of timing or notice. It affirmatively authorizes changes "without notice to Member" and provides that every change becomes effective "immediately without further action required" by anyone. *Cf. Serpa*, 215 Cal. App. 4th at 708 (covenant supplies a

reasonable-notice requirement "when, as here, the agreement is silent as to notice"). *See also*, *Asmus v. Pacific Bell*, 23 Cal. 4th 1, 15–18 (2000) (unilateral modification constrained by, among other things, reasonable notice and protection of vested rights); *Avery v. Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 61 (2013) (employer "must give the employee reasonable notice" of changes and may not apply changes to accrued claims).

The question is not whether courts ordinarily imply good-faith limitations when a modification clause says nothing about notice or existing claims. They do. The question is whether the covenant can supply the very notice limitation the drafter *expressly rejected*—and whether an implied prospective-only limitation can be reconciled with language making *all* changes immediately effective without notice or further action.

*Peleg* does not resolve those questions. For sure, it held that silence concerning accrued claims permits an implied prospective limitation. *Id.* at 1465. But it also reaffirmed that the covenant cannot contradict express contractual language. *Id.* at 1464.

The unsettled nature of California law is further illustrated by *Sorokunov v. NetApp, Inc.,* 342 Cal. Rptr. 3d 125 (Ct. App. 2026), *reh'g granted, opinion not citeable* (Mar. 30, 2026). On March 3, 2026, the California Court of Appeal issued a published opinion addressing *Peleg* in the context of a unilateral-modification provision. The court upheld a contract the agreement because the contract's text only granted modification authority "to the extent permitted by applicable law" and elsewhere required changes to be "consistent with" applicable law. The Court of Appeal relied on that express savings language to incorporate *Peleg*'s restrictions by reference. *Sorokunov* at 12–15.

The Court of Appeal subsequently granted rehearing and vacated that opinion, and a superseding opinion has yet to be filed. The vacated opinion therefore has no precedential force. However, *Sorokunov*'s reliance on a savings clause (which The

Joint's membership agreement does not have) illustrates the liquid nature of California law on this issue. If *Peleg* supplied a clear answer (as the Order held), reliance on a savings clause would be unnecessary.

**2. *Paxson* confirms that a substantial, recurring, and important formation question exists.**

*Paxson* provides unusually strong confirmation immediate appellate consideration is warranted. The agreement there allowed its drafter to change the terms "at any time," made changes effective immediately upon posting, required no individual notice, and contained no exclusion for the arbitration clause or accrued claims. *Paxson* at *1. The district court held that the implied covenant constrained that authority and interpreted the clause to operate only prospectively. *Id.* at *2. And the defendants in *Paxson* relied specifically on California decisions, including *Peleg*, for a prospective-only construction. *Id.* at 9. However, the Ninth Circuit found *Peleg* inapposite because the contract authorized changes at any time, made them effective immediately, and nowhere excluded accrued or pending claims. *Id.* at 9–10. The same material features as here.

*Paxson* applies Nevada law and therefore does not dictate the merits here. But it is highly persuasive on whether substantial grounds for disagreement exist. Indeed, it expressly distinguished *Peleg* based on the language of the contract. *Paxson* also recognized that the issue has broad public importance because "modification provisions are a common feature of consumer agreements, and courts across the country have repeatedly confronted their effect on arbitration clauses within the agreements." *Id.* at *5.

Notably, Section 4 is *more* explicit than the provision in *Paxson*: rather than requiring contract changes to be posted, the membership agreement permits The Joint to modify the terms "without notice to Member[.]"

The present matter—like *Paxson*—presents an unresolved, significant, and determinative formation question. At minimum, fair-minded jurists could differ over

whether the provision here can be saved by implied restrictions that its language appears to disclaim.

**C. Immediate review will materially advance the litigation.**

Certification would resolve a threshold question before the parties incur the expense of arbitrating a case that may never have been subject to arbitration.

If Plaintiff is correct that the contract is illusory, proceeding now would require her to arbitrate her individual claims in Phoenix, while her class claims remain dismissed, only to litigate after arbitration whether the arbitral forum ever possessed contractual authority. Should Plaintiff prevail on an appeal from a final judgment, the whole arbitration would be voided *ab initio*. That is precisely the needless expense and delay *Kuehner* identifies.

The Court has stayed Plaintiff's individual claims, dismissed the class claims, and administratively closed the case. The only question is when the Ninth Circuit will review the Order. Plaintiff submits that as the controlling formation issue will be reached eventually, it should be resolved via interlocutory appeal now.

**IV. CONCLUSION**

Plaintiff respectfully requests that the Court amend its August 13, 2026 Order to include the following certification:

> **Pursuant to 28 U.S.C. § 1292(b), the Court is of the opinion that this Order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal may materially advance the ultimate termination of the litigation. The controlling question is:**
>
> **Whether the implied covenant can restrict unilateral modifications to prospective application notwithstanding express language authorizing modifications without notice and making them effective immediately.**

Respectfully submitted,

WGLA, LLP

/s/Benjamin Gubernick
Benjamin Gubernick (SBN 321883)

E-mail: ben@wglawllp.com
Telephone 346-277-0287
Fax: 346-341-0169
717 Texas St. Suite 1200
Houston, TX 77007

**Meet and Confer Certification**

I certify that I exchanged emails with opposing counsel regarding this motion. During the emails I repeatedly asked opposing counsel if he would meet and confer, and advised him of the basis of this motion. Opposing counsel implied he was opposed to this motion but did not agree to meet and confer, and did not respond at all to my final email regarding a meet and confer.

/s/Benjamin Gubernick
Benjamin Gubernick

**Certificate of Service**

I certify that the following was served on all parties' attorneys of record via the Court's efiling system.

/s/Benjamin Gubernick
Benjamin Gubernick